**EXECUTION SCHEDULED FOR JANUARY 14, 2021**

No. 21-1

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff – Appellee,**

**v.**

**COREY JOHNSON, A/K/A O, A/K/A CO,**

**Defendant – Appellant.**

_____

**CAPITAL CASE**

**REPLY TO UNITED STATES' OPPOSITION TO MR. JOHNSON'S MOTION TO STAY EXECUTION**

_____

Donald P. Salzman
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

Counsel for Appellant Corey Johnson

1

**INTRODUCTION**

Corey Johnson is intellectually disabled. A wealth of evidence establishes his disability, from child IQ scores to his failure to develop ordinary life skills to well-supported diagnoses from three prominent experts in the field.  Under the federal capital statute, if a death sentence has been imposed on a person with intellectual disability, it cannot be carried out. 18 U.S.C. §3596(c); 21 U.S.C. §848(*l*).  If Mr. Johnson has intellectual disability, which all the evidence indicates, his death sentence must not be implemented.

As the government has announced a plan to execute Mr. Johnson on January 14, he has invoked the express terms of the statute to prevent his death sentence from being carried out and seeks to show that he meets its terms. The District Court for the Eastern District of Virginia ruled he had no right to raise such a claim pursuant to 28 U.S.C. §2255. The government agrees; contends the question is not subject to debate; and urges this Court to a deny stay of execution without a full review of the law—or of the considerable proof of his intellectual disability.

The government's main arguments in its Response in Opposition ("Opp.") to a stay are that the statute does not permit an examination of intellectual disability at the time of execution; that his §2255 motion is successive in nature; and that the equities favor the government. Mr. Johnson responds to each briefly below. He begins though with a central factual issue.

1

## I.  NO COURT HAS SEEN AN AFFIRMATIVE CASE FOR INTELLECTUAL DISABILITY IN THESE PROCEEDINGS

The government suggests throughout its pleading that Corey Johnson has already had whatever process §3596(c) or §848(*l*) confers and that the courts have reviewed his "record" on his intellectual disability. Opp. at 3 ("[E]vidence of intellectual disability is unpersuasive in the context of the record as a whole."); at 11 (stating that this Court has already considered the merits of Mr. Johnson's claim); at 14 (same).  But the "record as a whole" in this case was essentially an IQ score of 77, *id.* at 3: a psychologist testified in 1993 that he ruled out intellectual disability at the time because of that score, and there the case has stopped. 2255 Mot., Ex. 7 at 3692.  In §2255 proceedings, the district court found that Mr. Johnson was not intellectually disabled again based solely on the finding of the trial expert on IQ. 2255 Mot., Ex. 73 at 80-84 (5/1/03 Mem. Op., Dkt. 896).  This Court then reviewed the same evidence in upholding the decision below:

> At the penalty phase of Johnson's trial, Dr. Dewey Cornell, a psychologist, testified that, on October 10, 1992, he had administered a Wechsler Adult Intelligence Scale Test ("WAIS Test"). Johnson exhibited an IQ of 77, which indicated a "generally impaired intelligence," placing him "just above the level of mental retardation." Importantly, Dr. Cornell testified . . . that he double-checked his numbers and consulted colleagues before reaching this conclusion.

*United States v. Roane*, 378 F.3d 382, 408-09 (4th Cir. 2004) (considering only the question of his IQ score of 77 and finding that Mr. Johnson was not mentally

2

retarded). When the government contends now that "the extensive evidence from prior proceedings establishes that Johnson does not possess an intellectual disability," this is the extent of the evidence. Opp. 25.

The only substantive challenge the government makes to the wealth of proof Mr. Johnson has proffered is to point to testimony from the trial about the offenses which it contends contradicts a finding of intellectual disability. Opp. at 25. But both courts and medical experts flatly reject reliance on such testimony in an assessment of the disability. *Moore v. Texas*, 137 S. Ct. 1039, 1047 (2017) (vacating Texas Court of Criminal Appeals's improper adherence to superseded medical standards, noting emphasis on petitioner's adaptive strengths, including evidence of "committing the crime in a sophisticated way"); *Holladay v. Allen*, 555 F.3d 1346, 1360-61, 1363 (11th Cir. 2009) (noting state expert's misplaced "predominant focus on Holladay's actions surrounding the crime" in connection with adaptive functioning); *United States v. Davis*, 611 F. Supp. 2d 472, 500 (D. Md. 2009) (citing experts' determination that criminal behavior should not be considered in assessing adaptive functioning). The government has no other rejoinder to the powerful evidence proffered here because there is none.

## II.    THE GOVERNMENT ASKS THIS COURT TO READ THE IMPLEMENTATION LANGUAGE AND HISTORY OUT OF §3596 AND §848

Throughout its opposition, the government treats the federal statute as if it did not prohibit the "carrying out" of a death sentence. First, it suggests throughout that Mr. Johnson is asking to "re-litigate" an earlier claim. Opp. at 1, 2, 8,11, 14, 16, 17. This is not the case. Nor is Mr. Johnson saying that *any* claim about intellectual disability must be unripe prior to execution. Opp. at 13. Federal defendants have challenged the government's ability to sentence them at trial and in post-conviction and have every right to do so. But §3596(c) is about *implementation*. A prisoner may challenge implementation of his sentence even if he has earlier challenged the power of the government to impose it at all.

This is a commonsense reading of the provision.  It appears in a section titled "Implementation of a sentence of death" which deals with plans for execution.[1] Its speaks to those few narrow circumstances under which a death sentence, already imposed, may not be carried out. This provision is not coterminous with *Atkins* as the government suggests, Opp. at 18, as it explicitly

---

[1] As explained in Mr. Johnson's Informal Preliminary Brief, With Request for Certificate of Appealability, the FDPA presents its sections in chronological order, from pretrial to execution, a change from the arrangement of the more scattered provisions of the ADAA. But it did not alter the language from the ADAA about mental retardation. *See* Informal Prelim. Brief at 22-24.

prohibits *execution* which is not equivalent to sentencing. *See Atkins v. Virginia,* 536 U.S. 304, 314 n.10 (2002) ("Congress expanded the federal death penalty law in 1994. It again included a provision that prohibited any individual with mental retardation from being sentenced to death *or* executed.") (emphasis added). While it is true that a "successful challenge . . . 'pretrial'" will prevent a death sentence from being "carried out," Opp. at 19, the provision is not so limited.[2] The government is asking this Court to strip the text and the placement of § 3596(c) of any meaning in order to accept its interpretation.[3]

---

[2] With all due respect to the government, its argument that § 3596(a) fully implicates actions that must take place at the time of execution but § 3596(c) does not is preposterous. Opp. at 21 n.7. One would have to find that *every other sentence* in § 3596 concerns plans for or restrictions on execution except the one that reads: "A sentence of death shall not be carried out upon a person who is mentally retarded."

[3] The government's handling of the legislative history is no more edifying. Opp. at 22-23. Its description, for example, of Congressman Levin's statement (regarding the ADAA) about intellectual disability being "handled as any other defense" is taken out of context; he was responding to a comment about "the burden" of proof being "on the defense." Motion Ex. 78 (134 Cong. Rec. 22,926, 22,993 (1988)). Who has the burden of proof is unrelated to the timing of the claim. Then-Congressman Levin was, in fact, supportive of the legislation that he agreed involved "no danger here that there would be effective abuse by someone who inappropriately claimed mental retardation" because the purpose of the legislation was "very much confined to prohibit execution of those who are mentally retarded." *Id.*

Finally, the government relies heavily on *Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020), to paper over these weaknesses. But *Bourgeois* is neither instructive nor illuminating here.

For one, unlike Mr. Johnson's case, the petitioner in *Bourgeois* was tried after *Atkins*; had a robust, week-long §2255 evidentiary hearing with expert testimony from both parties in 2010; received detailed district court factual findings under modern clinical guidelines rejecting claim; and had layers of appellate review in §2255 proceedings all prior to his (unsuccessful) attempt to vacate his death sentence pursuant to the 28 U.S.C. §2255(e) savings clause. *Id.* at 625-28; *see also United States v. Bourgeois*, No. C-07-223,  2011 WL 1930684, at *20-44 (S.D. Tex. May 19, 2011) (containing district court's factual findings, credibility determinations, and evaluation of Bourgeois's *Atkins* claim under modern clinical and legal standards). Corey Johnson, whose federal trial was the very first[4] of a man we now know to be intellectually disabled, did not.

---

[4] It may also very well be the last.  Given the development of federal standards to identify and assess intellectual disability, it is unlikely, though of course not impossible, that circumstances will converge as they did here to allow an impairment like Mr. Johnson's to go unaddressed. In urging this Court to deny a stay, the government states repeatedly that Mr. Johnson has been on death row for 27 years. Opp. At 1, 3.  But it is this same fact that underscores how rarely the situation facing this Court is likely to arise as it as here.  This case is unfortunately a throwback to another era.

The government—and the district court below—make much of the Seventh Circuit's observation that Mr. Bourgeois seemed "to confuse intellectual disability with the temporary condition of incompetency, which may come and go," *see id.* at 637; Opp. at 13. But Mr. Johnson does not confuse or conflate the two conditions. It is the statute that fuses them together, and his well-supported position here is that §3596(c) operates as a distinct statutory backstop meant to protect individuals like him from wrongful execution. His right to utilize that protection ripens for review at the time the government implements a previously imposed death sentence.

## III.    MR. JOHNSON'S §2255 MOTION IS NOT SUCCESSIVE.

The government states that Mr. Johnson's claim is successive and spends much time attempting to distinguish his case from existing case law on second, non-successive pleadings. Opp. at 11-16. Respondent's arguments miss the mark. The cases that Mr. Johnson cited do not exhaust all possibilities of the types of second-in-time claims considered non-successive but provide examples. Mr. Johnson's is one such claim, based on the federal statute's prohibition "carrying out" a death sentence. His claim is premised on the right Congress created to prevent the execution of persons with intellectual disability. It chose to create that right, just as it has chosen to create expansive protections (both procedural and substantive) for federal criminal defendants in other contexts. *See, e.g.*, 18 U.S.C. §3553(a) (mandating that federal sentence not be greater than necessary to comply

with the specifically-enumerated goals of the statute); 18 U.S.C. §2518 (providing a higher burden than required by Fourth Amendment for federal wiretaps). Here the plain language of the statute demonstrates that Congress intended to prevent the government carrying out an execution of a person with intellectual disability and it intended that prohibition to occur when the execution was imminent.[5]

The cases cited by the government are simply inapposite. *Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 897 (2020), and *Williams v. Kelley*, 858 F.3d 464 (8th Cir. 2017), for example, rejected arguments that a state prisoner could raise an Eighth Amendment *Atkins* claim in a second-in-time non-successive application. But these cases have no bearing on whether a *federal* statute (which expressly provides that a determination of intellectual disability can be made when the sentence is being implemented) is non-successive. *Busby*, in fact, supports Mr. Johnson's position, stating that "Texas law is less demanding than federal law in this regard," 925 F.3d at 712. The statute of the jurisdiction of conviction (Texas in *Busby* and federal law for Mr. Johnson) controls and can allow a second-in-time pleading notwithstanding a court's interpretation of *Atkins*.

---

[5] Both §§ 848 and 3596 speak in terms of an already-imposed death sentence ("a death sentence shall not be carried out…") Congress clearly anticipated situations where a death sentence would have been imposed on someone with mental retardation/intellectual disability and moved to ensure that such cases would not proceed to execution.

## IV.     THE EQUITIES FAVOR HEARING MR. JOHNSON'S CLAIM THAT HE MUST NOT BE EXECUTED

The government presses finality and a concern over "dilatory tactics" as

reasons for this Court to deny a stay of execution.[6] But a claim seeking to preclude

implementation of a death sentence pursuant to § 3596(c) or § 848(*l*) will be made

when the sentence is to be implemented—that is, when the government has

scheduled an execution date. That is what Mr. Johnson has done here.[7]  That is not

a "tactic" – he is requesting that a court consider his strong evidence of intellectual

disability pursuant to a statute that provides for him to do so. And where the

---

[6] The government also complains that no stay of the judgment was sought pursuant to Rule 8 of the Federal Rules of Appellate Procedure before a stay of execution was sought in this Court. Opp. at 8 n.2.  But as the district court here found it was without jurisdiction to consider Mr. Johnson's § 2255 motion, it is unclear what judgment he would ask it to stay. A stay in a criminal case is governed not by Fed. R. App. P. 8 but by Fed. R. Cr. P. 38. *See, e.g.*, *United States v. Cisneros*, No. CR 01-1709, 2003 WL 27384800, at *2 (D.N.M. Nov. 18, 2003).

[7] Mr. Johnson has pointed out elsewhere that the government has not evidenced any rush to execute him before now. Reply in Supp. of Emer. Mot. to Stay of Execution Pending Consideration and Disposition of Motion for Authorization and Underlying Motion at 9-13, Doc. 20-1. He is not by any means complaining about that fact. But it does undermine its sudden insistence on moving so quickly in the face of the serious issue he has raised.

evidence is this strong, and no court has ever been able to consider it, finality must give way.

The government finally argues that the public's interest is in seeing Corey Johnson executed.[8] But no one has an interest in seeing the law violated. Nor is the public served by putting to death a man without hearing the evidence that would in all likelihood prevent that execution from occurring. In this case, under these circumstances, the balance of the equities must weigh in favor of a stay.

---

[8] The government refers to the jurors and the victims in urging denial of a stay. As to the jurors, they imposed a death sentence having been told that the defendant before them was not intellectually disabled and would pose a future danger if allowed to live, and both have proved untrue. (Mr. Johnson has been a model inmate with a nearly spotless and completely nonviolent record throughout his time in prison. First Step Act Motion at 33-36. And Mr. Johnson cannot speak to the suffering of the victims, about whom he has continually expressed great remorse. When Congress passed both the ADAA and the FDPA, it had to know that a prohibition on executing someone under death sentence with mental retardation might prove difficult for victims' survivors or others involved in the case. But so important was this prohibition that it was enacted twice. The intellectually disabled must not in any event be executed under federal law.

10

## CONCLUSION

Corey Johnson respectfully asks this Court to stay his January 14, 2021 execution so that he may establish his death sentence cannot be implemented because he is intellectually disabled.

Dated: January 12, 2021                  Respectfully submitted,

/s/ Donald P. Salzman
Donald P. Salzman
David E. Carney
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Corey Johnson*

## **CERTIFICATE OF COMPLIANCE**

1.     This reply contains 2600 words, excluding the parts of the reply exempted from the word count by Fed. R. App. P. Rule 27(d)(2), 32(f).

2.     This reply complies with the font, spacing, and type size requirements set forth in Fed. R. App. P. Rule 32(a)(5) and (a)(6).

<u>/s/ Donald P. Salzman</u>

## **CERTIFICATE OF SERVICE**

I certify that on this 12th day of January 2021, the foregoing document was served on all parties or their counsel of record though the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/ Donald P. Salzman
Donald P. Salzman
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Counsel for Appellant Corey Johnson*